**Gary Steven KRIST, Plaintiff,**

v.

**OLYMPIA PRESS, INC., et al.,
Defendants.**

No. 72 Civ. 2473.

United States District Court,
S. D. New York.

July 6, 1972.

Gary Steven Krist, pro se.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiff, a state prisoner at Georgia State Prison in Reidsville, Georgia, appearing in this Court *Pro Se* and by mail, moves for a temporary restraining order and order to show cause for a preliminary injunction to prevent defendants from publishing his autobiography entitled "Life and/or The Man Who Kidnapped Barbara Mackle" ("the Work"). That book, concededly written by plaintiff recounts details of the notorious crime for which he is now serving a sentence of life imprisonment, the 1968 kidnapping for ransom of a Florida heiress, who was buried alive pending ransom negotiations, but survived.

Plaintiff's asserted basis for relief is that if his book is published and distributed, his eligibility for parole at some future time will be impaired. He asserts that his book may contain "incriminating statements or statements which portray the plaintiff as a habitual or incurable criminal", and that parole board members in Georgia will read his work, as "a certainty because of the infamous nature of the case."

On February 22, 1969, plaintiff executed a detailed power of attorney, granting full rights to one Hardin, not sued, to act in connection with sale and publication of his autobiography. The power was executed in jail, while plaintiff was under indictment, charged with kidnap for ransom. Plaintiff alleges that James R. Venable, Esq., an Atlanta attorney, agreed at the time of the execution of the power, to act as counsel for plaintiff in return for execution of the power running to Hardin, and a beneficial interest in the proceeds to be realized through its exercise. Indeed, the power recites that Venable would work with Hardin regarding the subject matter of the power. Plaintiff claims that Venable was a court appointed attorney and was unauthorized to participate, and that plaintiff's execution of the power

was obtained by fraud, duress and that there was a failure of consideration.

In 1970, plaintiff's work was complete. The 638 page manuscript autobiography was turned over to Venable. Plaintiff charges that his attorney Venable, not sued, agreed orally to process his case to the Supreme Court of the United States, if necessary. Plaintiff alleges that on August 2, 1971, Venable agreed orally to file a writ of habeas corpus, in return for plaintiff's promise not to revoke the power of attorney to Hardin. Venable, it is alleged, never fulfilled his alleged promises. On November 22, 1971, plaintiff says he cancelled and revoked the power, in writing. He claims that from September 4, 1971, until April 26, 1972, he wrote at least twenty letters to Hardin, expressly revoking his authority.

On April 26, 1972, Hardin, for a valuable consideration, agreed in writing with defendant Capito N.V., a Netherlands corporation, and Olympia Press, Inc., of New York ("the publishers"), for publication of this Work of non-fiction, characterized as an "authorized memoir", in English (U.S.A., U.K. and the British Commonwealth), French, German, Italian and Dutch. Plaintiff does not allege that the publishers had notice of the frauds or duress by Hardin or Venable, or failure of consideration, nor of his attempted repudiation, in November, 1971, of the power of attorney. The agreement made by Hardin with these defendants appears reasonable and usual on its face, and the publication thereunder is for the account of plaintiff, as well as Venable.

Against this factual background, plaintiff seeks, in addition to the preliminary injunction and temporary restraining order, final relief in the form of a declaratory judgment which shall restrain the defendants and their agents from (a) paying over monies from the autobiography transaction to Venable; (b) "unlawfully causing to be reproduced or reproducing in book form the Work of the plaintiff without paying the plaintiff for this use of his property, and without a valid contractual agreement allowing same"; (c) "unlawfully contracting to publish the plaintiff's autobiography with a third party, George P. Hardin, without reasonable efforts to determine whether said third party was . . . in fact the agent and attorney of the plaintiff"; and (d) publishing and distributing the Work, the autobiography of the plaintiff, until such time as a true and correct copy of the Work is delivered to plaintiff and defendants "receive his written notification that the Work is as he wrote and intended it to be published."

■ To the extent that the plaintiff seeks relief concerning the disbursement of the monies, Venable and Hardin would appear to be indispensable parties, and no litigation may adjudicate the rights of the plaintiff with respect to the money to be derived from the Work unless they be made parties, (Rule 19, F.R.Civ.P.).

■ Capito N.V., the Netherlands corporation, does not appear to be present in the Southern District of New York. Efforts by our Marshal to serve the summons and complaint on this defendant, and similar efforts to serve the individual defendants Massimo Pini and Maurice Girodias have been unsuccessful, and are likely to remain so. Defendant Olympia Press, Inc. has been served.

The Court has been advised informally by the attorney for Olympia Press, Inc., called pursuant to Rule 65(b), F.R.Civ. P., that the New York corporation, Olympia Press, Inc., is not publishing plaintiff's autobiography; rather, it is being published by Capito N.V. and another Olympia corporation located overseas, and not within this District.

There would seem from the foregoing to be a serious jurisdictional bar to the granting of any relief herein, and the temporary restraining order might be a useless act were the Court disposed to do so.

Assuming the allegations in the complaint are true, it would appear that the

publishers received the manuscript from the hands of a person who had been put into possession thereof by plaintiff's own act. Plaintiff admits he wrote the autobiography. He admits that he signed the power of attorney to Hardin in the first instance, permitting him to take these goods out into the world of commerce. Such circumstances do not commend themselves to the Chancellor's conscience, when we are asked to restrain publication in violation of defendant's First Amendment rights.

In 1839 in New York, long before the enactment of the Fourteenth Amendment to the U. S. Constitution, and long before that Amendment was construed by the Supreme Court of the United States to make applicable to the States any provisions of the first ten Amendments, one Lance, a discharged employee of Dr. Benjamin Brandreth, became enraged at his former employer. He vowed revenge and threatened to destroy him. In Brandreth v. Lance, 8 Paige's New York Chancery Reports 24, Dr. Brandreth's bill came before Chancellor Walworth.

It there appeared that Lance inspired the co-defendant Trust to write the complainant's life and defendants were about to publish a work or pamphlet entitled "The Life, Exploits, Comical Adventures and Amorous Intrigues of Benjamin Brandling (sic) M.C., V.P., L.V. S., a Distinguished Pill Vender, written by himself, Interspersed with Racy Descriptions of Scenes of Life in London and New-York."

The Chancellor declined to enjoin publicaton of the work, stating in words which come clearly through the ages: (p. 26)

"It is very evident that this Court cannot assume jurisdiction of the case presented by the complainant's bill, or any other case of the like nature, without infringing upon the liberty of the press, and attempting to exercise a power of preventive justice which as the legislature has decided cannot safely be entrusted to any tribunal consistently with the principles of a free government."

Chancellor Walworth observed that the House of Commons impeached one Scroggs, Chief Justice of the Court of Kings Bench, for issuing an order of court prohibiting publication of a work entitled "The Weekly Packet of Advice From Rome, or the History of Popery". (8 Howell's State Trials 198.)

Plaintiff has an adequate remedy at law. He shows no irreparable damage. Nor can we accept the conclusory allegation that members of the Georgia State Parole Board will, of necessity purchase this work of public interest, in English, French, German, Italian or Dutch, and read it, simply because of the notorious quality of the crime. They will have first hand objective reports as to what plaintiff did, and the Court is unwilling to assume that plaintiff's eligibility for parole will be judged in accordance with his literary ability.

The application for a temporary restraining order and that an order to show cause be issued is denied for the reasons aforementioned.

So ordered.